UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN ZEIGLER, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No. 15-cv-13384-IT |
| ATRIUS HEALTH, INC., | * |
| CHRISTOPHER JOSEPH, and | * |
| MICHAEL RATER, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

November 8, 2017

TALWANI, D.J.

Plaintiff Alan Zeigler brings this libel action against Defendant Michael Rater, M.D. ("Dr. Rater").[1] Zeigler alleges that Dr. Rater made false statements in fitness-for-duty evaluations of Zeigler and supplied those statements to Zeigler's employer, Atrius Health, Inc., ("Atrius"). Before the court is Dr. Rater's Motion for Summary Judgment [#102]. Because Dr. Rater's statements were protected by a conditional privilege, Dr. Rater's motion is ALLOWED.

I. Background[2]

As a regular component of his psychiatry practice, Dr. Rater performs employee fitness-

---

[1] Zeigler's Amended Complaint also asserted a medical malpractice claim against Dr. Rater, but the parties filed a Stipulation of Dismissal with Prejudice [#71] as to the medical malpractice claim. Zeigler's claims against the remaining defendants will be addressed in a separate order.

[2] A court deciding a motion for summary judgment construes the facts supported by the record in the light most favorable to the non-moving party. See Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). All facts material to Dr. Rater's motion for summary judgment are either undisputed or not properly disputed for purposes of summary judgment. See Fed. R. Civ. P. 56(c), (e)(2).

for-duty evaluations through employer referrals provided by Scope Medical, LLC ("Scope Medical"). Def. Rater's Mot. Summ. J. ["Rater Mot. Summ. J."] Ex. 5 ["Rater Dep."] 48:2-49:14 [#103-5]. In June 2015, Dr. Rater received such a referral to evaluate whether Zeigler was fit to return to his job as an information technology professional at Atrius. Id. at 48:2-5.

According to his report, Dr. Rater prepared for his evaluation by reviewing materials including Atrius's job description for Zeigler's position and records from Zeigler's primary care physician. Rater Mot. Summ. J. Ex. 8 at 8 ["June Report"] [#103-8]. Dr. Rater also reviewed an email from Atrius's Benefits Department that described Atrius's reasons for requesting the evaluation. Rater Dep. 118:5-17. Dr. Rater conducted Zeigler's in-person evaluation on June 11, 2015. At the outset, Dr. Rater explained that he had been asked to conduct the fitness-for-duty examination on behalf of Atrius. Rater Mot. Summ. J. Ex. 9 ["Zeigler Dep. Vol. II"] 112:22-25 [#103-9]. Zeigler confirmed that he understood that the examination was not confidential, and that Dr. Rater would report his conclusions to Atrius. Id. at 113:3-7.

On June 26, 2015, Dr. Rater generated a report ("June Report"), which he sent to Atrius. Id. The nine-page report included a narrative description of Zeigler's work history, as relayed by Zeigler; a description of Zeigler's physical symptoms, psychological symptoms, medical history, and medications; and Dr. Rater's summary of his review of Zeigler's medical records. Id. at 1-7. The report concluded that Zeigler was not yet fit to return to work. Id.

In late July 2015, upon learning that Zeigler had engaged the services of a mental health professional, Atrius requested a second fitness-for-duty evaluation of Zeigler to determine whether this counseling qualified Zeigler to return to his prior position. Rater Mot. Summ. J. Ex. 10 ["Scope Medical Physician's Letter"] [#103-10]. Scope Medical again assigned the evaluation to Dr. Rater and instructed him to report his conclusions verbally immediately after

2

the meeting. Id. Dr. Rater conducted a second in-person examination of Zeigler on July 30, 2015. Zeigler Dep. Vol. II 126:16-22. Zeigler understood that Dr. Rater was acting in the same capacity as he was for the first examination and would forward his report to Atrius. Id. at 128:15-25. Afterward, Dr. Rater verbally reported to Scope Medical that Zeigler was fit to return to work, and Scope Medical forwarded this conclusion to Atrius. Rater Dep. 248:6-10.

Before Dr. Rater could complete his written report of Zeigler's second examination, Dr. Rater received a call from an employee at Scope Medical stating that Zeigler unsuccessfully attempted to return to work on August 4, 2015. Rater Dep. 262:20-263:3. Through Scope Medical, Atrius forwarded to Dr. Rater three emails from Atrius employees giving their accounts of the events occurring upon Zeigler's return. Id. at 269:10-14.

On August 10, 2015, Dr. Rater generated a second written report ("August Report"), in which he evaluated Zeigler's fitness for duty in light of both the second in-person evaluation as well as the materials Atrius supplied regarding Zeigler's return to work. See August Report 8. The August Report contained much of the same medical and employment background information as the June Report. In the "Summary and Conclusions" section, Dr. Rater wrote that Zeigler was not able to perform the management, coordination, and teamwork functions required by his job. Id. at 7. Dr. Rater concluded that Zeigler was not fit to return to work at the time. Id.

II. Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S.

3

242, 248-50 (1986)). The initial burden is on Dr. Rater, as the moving party, to show "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If Dr. Rater meets this burden, the burden shifts to Zeigler, as the nonmoving party, to "adduce specific facts showing that a trier of fact reasonably could find in his favor." Murray v. Warren Pumps, LLC, 821 F.3d 77, 83 (1st Cir. 2016) (citing Anderson, 477 U.S. at 249-50).

III. Discussion

Zeigler brings this libel claim against Dr. Rater based on statements in the "Summary and Conclusions" section of the August Report.[3] Under Massachusetts law, libel is a written defamatory statement. See Draghetti v. Chmielewski, 626 N.E.2d 862, 866 n.4 (Mass. 1994).[4] To prevail on a defamation claim, a plaintiff must "establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d 1034, 1036 (Mass. 2004) (citing Ravnikar v. Bogojavlensky, 782 N.E.2d 508 (Mass. 2003)). Yet even assuming Dr. Rater's statements in his August Report satisfied the elements of a libel claim, an individual possesses a conditional privilege to publish defamatory material so long as "the publication is reasonably necessary to the protection or furtherance of a legitimate business interest." Bratt v. Int'l Bus. Machs. Corp., 467 N.E.2d 126, 131 (Mass. 1984).

Massachusetts law provides that "[a]n employer has a conditional privilege to disclose

---

[3] Zeigler's complaint initially based this claim on statements in the June Report. See Am. Compl. ¶ 82 [#30]. However, in his Memorandum in Opposition to Dr. Rater's Motion for Summary Judgment, Zeigler referred only to two libelous statements, both of which appear in the August Report. See Zeigler Opp'n to Rater Mot. Summ. J. 10, 14 [#125-1]. At the hearing on Dr. Rater's motion, Zeigler clarified that his claim is based on statements in the August Report.

[4] The parties agree that Massachusetts law applies to Zeigler's libel claim against Dr. Rater.

4

defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." Id. at 129. This includes "disclosures by employers of defamatory medical information concerning employees which is relevant to the employees' fitness to perform their work." Id. at 133. In Bratt, the Supreme Judicial Court cited extensively to a case holding that a Navy psychiatrist's statements evaluating a Navy employee's fitness for duty were privileged. Id. (citing Hoesl v. United States, 451 F. Supp. 1170, 1179 (N.D. Cal. 1978)). Here, of course, Dr. Rater was not Atrius's employee. But Atrius, acting through the intermediary Scope Medical, hired Dr. Rater to evaluate Zeigler's fitness for duty. The statements underlying Zeigler's libel claim were all in furtherance of Dr. Rater's task, as assigned by and performed for Atrius, of assessing Zeigler's ability to perform his job duties. This placed Dr. Rater in an analogous role to that of the Navy-employed psychiatrist in Hoesl, 451 F. Supp. at 1179. There is no reason to treat Dr. Rater differently than an internal company doctor performing the same function.

Application of the conditional privilege here is also consistent with cases applying the privilege "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." Sheehan v. Tobin, 93 N.E.2d 524, 528 (Mass. 1950). Common interests extend beyond the limited context of intra-company statements. See, e.g., Downey v. Chutehall Constr. Co., 19 N.E.3d 470, 476-77 (Mass. App. Ct. 2014) (statement by contractor to homeowner privileged when contractor hired to provide evaluation of home); Humphrey v. Nat'l Semiconductor Corp., 463 N.E.2d 1197, 1199 (Mass. App. Ct. 1984) (employee of one company privileged in making disparaging comments about employee of another company when both companies had business relationship). Based on their arrangement, Dr. Rater and Atrius shared a common interest in evaluating Zeigler's fitness for duty.

Because this is only a *conditional* privilege, it may be lost, but "only if the plaintiff proves that the disclosure resulted from an expressly malicious motive, was recklessly disseminated, or involved a reckless disregard for the truth or falsity of the information." Bratt, 467 N.E.2d at 133. In an attempt to show that Dr. Rater abused his privilege, Zeigler argues that Dr. Rater breached his ethical duties by: (1) relying only on Atrius-supplied information; and (2) evaluating Zeigler's fitness for duty after viewing an email from one Atrius employee stating that Zeigler was contemplating suing Dr. Rater, giving rise to a conflict of interest. Neither of these arguments satisfies Zeigler's burden. A dispute as to whether Dr. Rater breached his ethical duties is not "a trialworthy dispute as to whether [Dr. Rater's] statements were published either without a reasonable basis for forming a belief in their truth, or with actual knowledge of their falsity." Catrone v. Thoroughbred Racing Ass'ns of N. Am., Inc., 929 F.2d 881, 889 (1st Cir. 1991). Neither the written statements nor any other record evidence supports Zeigler's assertion that Dr. Rater drafted the conclusions in his August Report maliciously, recklessly, or with knowledge of their falsity so as to forfeit the conditional privilege.

IV.  Conclusion

For the foregoing reasons, Defendant Dr. Rater's Motion for Summary Judgment [#102] is GRANTED.


IT IS SO ORDERED.

November 8, 2017                                  /s/ Indira Talwani
                                                  United States District Judge

6